## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY GRACE MAURIZIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 04cv1168 |
| | ) | |
| FOX CHAPEL FOODS, INC.; t/d/b/a FOX | ) | |
| CHAPEL COMMUNITY SUPERMARKET, | ) | |
| PAUL ROSENBERG AND HOWARD | ) | |
| ROSENBERG, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

September 5, 2006

Presently before the Court is the MOTION FOR SUMMARY JUDGMENT, with

brief in support, filed by Defendants Fox Chapel Foods, Inc., t/d/b/a Fox Chapel Community

Supermarket, Paul Rosenberg and Howard Rosenberg *(Document Nos. 12 and 13)*, the

RESPONSE AND BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

filed by Plaintiff (*Document Nos. 19 and 20*), and the REPLY BRIEF filed by Defendants

(*Document No. 22*).

After careful consideration of Defendants' Motion, the filings in support and

opposition thereto, the memoranda of the parties, the relevant case law, and the record as a

whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury

could return a verdict for Plaintiff, Mary Grace Maurizio ("Plaintiff"), on her claims of gender

discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the

Pennsylvania Human Relations Act ("PHRA") and on her claims of retaliation under the

Family Medical Leave Act ("FMLA"). Therefore, the Court will grant Defendants' motion for

summary judgment as to all federal and state claims which allege gender discrimination under Title VII and the PHRA and as to all claims of retaliation under the FMLA.  The Court will also dismiss without prejudice the additional pendent state claims of negligent supervision and intentional infliction of emotional distress alleged by Plaintiff, Mary Grace Maurizio.

### Procedural Background

Plaintiff brought this lawsuit on August 5, 2004, by filing a seven-count Complaint in which she alleges that her former employer, Defendants Fox Chapel Foods, Inc., t/d/b/a Fox Chapel Community Supermarket, Paul Rosenberg and Howard Rosenberg (collectively referred to as "Defendants") wrongfully terminated her employment and engaged in other acts of gender discrimination in violation of Title VII and that the Defendants wrongfully terminated her employment and engaged in other retaliatory acts because she exercised her rights under the FMLA.  Additionally, Plaintiff alleges violations of Pennsylvania state law which include discrimination under the PHRA, negligent supervision, and intentional infliction of emotional distress.

Defendants have filed the instant motion for summary judgment in which they contend that Plaintiff is unable to establish a *prima facie* case of discrimination under Title VII or retaliation under the FLMA.  In the alternative, Defendants contend that assuming *arguendo* that Plaintiff could state a *prima facie* case under either Title VII or the FMLA, summary judgment should still be granted in their favor because there is no evidence that Defendants' articulated legitimate, non-discriminatory reason for Plaintiff's discharge (i.e., misconduct) was false and/or that Plaintiff's gender or FMLA leave was the real reason for her termination.

## BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows.  In October of 1996, Plaintiff was hired as a cashier at the Food Gallery store in Fox Chapel, Pennsylvania.  All bargaining unit employees of the Food Gallery were represented by United Food & Commercial Workers Union ("UFCW"), Local 23. (Stmt of Undisputed Material Facts, ¶2).

In November 1999, Fox Chapel Foods, Inc., t/d/b/a Fox Chapel Community Supermarket,[1] purchased the store and retained all bargaining unit employees, including the Plaintiff, who was employed as a part-time clerk assigned to the produce department.  During her entire period of employment with Food Gallery and Fox Chapel Community Supermarket, Plaintiff was a member of the bargaining union represented by UFCW, Local 23. (*Id.* at ¶ 4.) The terms and conditions of employment for all bargaining unit employees at Fox Chapel Community Supermarket were covered by a Collective Bargaining Agreement ("CBA") between UFCW Local 23 and Fox Chapel Foods, Inc., effective as of February 17, 1998 and terminating February 19, 2005.  (*Id.* at ¶ 6.)

From December 17, 2001 to April 22, 2002, Plaintiff was on FMLA maternity leave. (*Id.* at ¶ 35.)  Within thirty (30) days from February 17, 2002, pursuant to the CBA, Fox Chapel Foods was required to create another full-time position.  (*Id.* at ¶ 36.)  Paul Rosenberg elected

---

[1]     Defendants Paul Rosenberg and Howard Rosenberg have respective ownership interests of fifty percent (50%) and twenty-five percent (25%) of the Fox Chapel Community Supermarket.

to place the full-time position in the produce department to make it easier for Plaintiff to qualify for the position as she needed dependent health care coverage for her newborn child.  (*Id.* at ¶ 38).  A store employee called Plaintiff and told her about the posting of the full-time position in produce.  Plaintiff was awarded the full-time position and upon her return from maternity leave, she received both wage and benefit increases under the CBA.

A few days prior to September 4, 2003, Paul Rosenberg was in the store and saw Plaintiff "leaving" the store fifteen (15) minutes before the end of her shift.[2]  (*Id.* at ¶ 8.)  He was subsequently told that she had not taken her fifteen (15) minute break. (*Id.*)   Paul Rosenberg did not say anything to Plaintiff or admonish her in any way on that day. (*Id.* at ¶ 9.)

Later that day when Paul Rosenberg saw General Manager Bill Nau ("Nau"), he told him that at the next managers' meeting, Nau was to tell the managers to schedule all employee breaks in the middle of the work shift.  (*Id.* at ¶ 10.)

Article 9.4 of the CBA provides as follows:

Rest Periods.

Employees scheduled to work six (6) or more hours per day, but less than eight (8) hours, shall receive one (1) rest period of twenty (20) minutes.  Employees scheduled to work eight (8) hours a day shall receive two (2) fifteen (15) minute rest periods, the first to occur in the morning and the second in the afternoon, or the first in the afternoon and the second in the evening for employees who are working a late schedule.  Rest periods will be granted as near to the middle of each work shift as possible.  Employees scheduled to work four (4) or more hours per day, but less than six (6) hours, shall receive one (1) fifteen (15) minute rest period.

CBA, Def's Ex. C.

---

[2]     Paul Rosenberg testified in his deposition that he saw Plaintiff leaving the store; however, in her deposition, Plaintiff testified that she was not leaving the store, but rather she was shopping in the store.

On September 4, 2003, Nau held a store managers meeting at which time he told all managers to schedule all employee breaks in the middle of scheduled work shifts.  (*Id*. at ¶ 11).

Plaintiff came to work on September 4, 2003 at approximately 2 P.M. and shortly after arriving was told by the produce manager of the mid-shift break policy.  (*Id.* at ¶ 13.)  Immediately after being told of the policy, Plaintiff went onto the store page system and paged Assistant Store Manager, Renee Sager, and then went to the back room area where Sager and Nau were present. (*Id*. at ¶ 15.)  Plaintiff was clearly upset by the break policy and asked to speak to Paul Rosenberg in private, but her request was denied.

Nau attempted to calm Plaintiff down and explained to her that the break policy applied to all employees, the meeting was not about her, and other topics were discussed at the meeting. (*Id.* at ¶ 16.)  Nau permitted Plaintiff to return to work and did not issue any discipline to her for her conduct. (*Id*. at ¶ 17.)

Paul Rosenberg later arrived at the store and learned that Plaintiff was upset by the break policy.  He went over to her in the produce department and told her that the meeting was not about her.  (*Id.* at  ¶18.)  As Paul Rosenberg turned to go towards the front of the store, the Plaintiff followed behind him and stated in a loud manner that she was "tired of you (Paul Rosenberg) turning your back on me" and that she was tired of "you (Paul Rosenberg) harassing me (Plaintiff)."  (Pl's depo at 28.)  This confrontation occurred on the store sales floor where customers were present.  (Statement of Undisputed Material Facts, at ¶ 20.)

After the confrontation, Plaintiff asked permission to leave work and go home, which request was granted.  No discipline was issued to Plaintiff as a result of the

5

confrontation.  Plaintiff "punched out" and waited outside, in front of the store, until her boyfriend came to pick her up.

When her boyfriend arrived, they both re-entered the store and Plaintiff, by her own admission, was in an "upset state."  (Pl's depo. at 44.)  She again began yelling at Paul Rosenberg and stated:

"a)     Don't turn your back on me;

b)     You are an evil man; and

c)     That the plaques honoring the Rosenberg family were lies and should be taken down."

(Stmt of Undisputed Material Facts, at ¶ 22.)[3]   Plaintiff was then told to leave the building with her boyfriend, which she did.  That evening, Plaintiff was called and told she was being placed on indefinite suspension.  (*Id.* at ¶ 23.)

Plaintiff attended a grievance session on October 2, 2003, held in the rear of the store.  She was represented by Union Representative Sue Riley and Store Union Steward Joe Pogel.  (*Id.* at ¶ 24.)  During the grievance session, Plaintiff became irritated and again yelled at Paul Rosenberg that he was an evil man and that she did not know what hate was until she met Paul Rosenberg.[4] (*Id.* at ¶ 25.)

Union Representative Sue Riley stopped the meeting due to the conduct of Plaintiff and asked Plaintiff to leave the meeting.  (*Id.* at ¶ 26.)   On that same day, Plaintiff's indefinite

---

[3]      Defendants also contend that Plaintiff yelled "that she would tell customers not to shop in the store," but Plaintiff denies ever making that statement.

[4]      Defendants also contend that Plaintiff again yelled "that she would tell customers not to shop in the store," but Plaintiff denies ever making that statement.

suspension was converted to a discharge.   Subsequently, the grievance filed on behalf of Plaintiff was withdrawn by Local 23.

Plaintiff contends that not only was her employment wrongfully terminated "because of her status as a female, but [she] was also subjected to a hostile working environment while employed by Fox Chapel Foods."  Pl's Br. at 8.  She also contends that her employment was wrongfully terminated in retaliation for her taking leave under the FMLA and that upon her return to work from maternity leave, her wages, benefits, and schedule were adversely affected.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

**DISCUSSION**

As stated above, Plaintiff claims that she was terminated from her employment because of her "status as a female" and in retaliation of her exercising her rights under the FMLA; that prior to her termination, she was subjected to a hostile work environment because of her "status as a female;" and that the terms of her employment were adversely affected in retaliation of her exercising her rights under the FMLA rights.   Defendants respond that they are entitled to summary judgment because (i) Plaintiff cannot make out a *prima facie* case under Title VII and/or the FMLA and (ii) assuming that Plaintiff could make out a *prima facie* case under either Title VII or FMLA, Defendants had a legitimate nondiscriminatory business reason for terminating her employment.  The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 525-27 (3d Cir. 1992), *cert. denied,* 510 U.S. 826 (1993).

A.      Prima Facie Case Under Title VII

As stated above, Plaintiff claims that she was subjected to an unlawful termination and a  hostile work environment because of her "status as female."  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).[5]  In a Title VII

_____

[5]      Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996).

(continued...)

lawsuit, if a plaintiff cannot produce direct evidence of discrimination, then she must utilize the familiar *McDonnell Douglas* formulation[6] regarding the appropriate burdens of proof and allocation of production of evidence.

       1.     *Claims of Unlawful Termination*

In order to prevail on her claim of unlawful termination, Plaintiff must prove that (i) she is a member of a protected class; (ii) her employment was terminated; (iii) she was qualified for the position from which she was terminated; and (iv) the circumstances under which she was terminated give rise to an inference of unlawful sex discrimination. *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1103 (3d Cir. 1997). Should the Plaintiff make this showing, a presumption of discrimination is created and the burden shifts to the Defendants to articulate some legitimate, nondiscriminatory reason for their decision. *Fuentes*, 32 F.3d at 763; *Weldon v. Kraft, Inc*., 896 F.2d 793, 797 (3d Cir. 1990).

The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a nondiscriminatory purpose. *Fuentes*, 32 F.3d at 763. If the defendant is able to clear this relatively low hurdle, the presumption evaporates and the onus is again on the plaintiff, who bears the ultimate burden of showing, by a preponderance of the evidence, that the defendant's proffered reason(s) were a pretext for discrimination. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1992).

---

[5] (...continued)
Therefore, the disposition of Plaintiff's Title VII claim applies with equal force to her PHRA discrimination claim.

[6]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The plaintiff can either prove this directly, by showing that discriminatory considerations motivated the defendant's actions, or indirectly, by showing that the rationale provided by the defendant is unworthy of credence. *Josey*, 996 F.2d at 638; *Weldon*, 896 F.2d at 797.

At trial, a Title VII plaintiff must prove both that the employer's reason was false and that discrimination was the real reason for the discharge. *Fuentes*, 32 F.3d at 763. However, the United States Court of Appeals for the Third Circuit has held that the plaintiff's burden is not as onerous when attempting to survive a summary judgment motion. In such situations, the plaintiff need only demonstrate that there are disputed factual issues concerning either (1) whether the proffered reason for the discharge is false, or (2) whether an invidious discriminatory reason was more likely than not a motivating or determinative cause for the discharge. *Torre v. Casio*, *Inc.,* 42 F.3d 825, 830 (3d Cir. 1994); *Fuentes*, 32 F.3d at 764.

For the purpose of this motion, the court will assume that Plaintiff has satisfied the first three elements of her *prima facie* Title VII unlawful termination claim. The Court finds, however, that Plaintiff has not established the fourth element of her unlawful termination claim. The record is completely void of any evidence sufficient to raise an inference that gender was a factor in the decision to terminate Plaintiff's employment.

It is undisputed that on the afternoon of September 4, 2003, Plaintiff loudly "confronted" Paul Rosenberg on the store sales floor. Further, it is also undisputed that during the grievance session held on October 2, 2003, Plaintiff again became irate and loudly yelled at Paul Rosenberg, telling him, *inter alia,* that he was "evil" and that she "did not know what hate was until she met" him.

After reviewing the record in this case, the Court concludes that Plaintiff has not offered sufficient evidence from which a reasonable fact finder could conclude that Plaintiff's termination was based on her gender, rather than her misconduct.  Because Defendant has presented uncontested evidentiary facts which establish that the Plaintiff's termination was the result of her misconduct, the Court finds that Plaintiff is unable to establish the fourth prong of a *prima facie* case of unlawful termination under Title VII.

However, assuming *arguendo* that Plaintiff could establish a *prima facie* case of unlawful termination, the Court finds and rules that summary judgment for the Defendants would still be warranted because Plaintiff cannot establish that the legitimate, nondiscriminatory reason articulated by Defendants for the discharge of Plaintiff was pretextual.

Defendants contend that they had a "legitimate, non-discriminatory reason for the discharge of the Plaintiff.  Her persistent outrageous conduct on the sales floor of the supermarket and at the subsequent grievance session violates the fundamental standard of conduct expected from employees toward the owner and chief operating officer of the business; her employer."  Defs' Br. at 16.  "Her conduct on September 4, 2003 and October 2, 2003 constitutes unacceptable conduct in support of discharge by any rational standard applied to the American workplace."  Defs' Reply at 2.

Insubordination and/or misconduct is a legitimate, non-discriminatory cause for termination.  *See Johnson v. Resources for Human Development*, 878 F. Supp. 35, 38 (E.D. Pa. 1995).  An employer is not subject to liability under Title VII for terminating an employee based on a belief that the employee was insubordinate or otherwise acted improperly even if

that belief was incorrect or the result of a flawed investigation.  *See Fuentes,* 32 F.3d at 765 (the issue is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent").

Therefore, under the final prong of the *McDonnell Douglas* analysis, the burden shifts back to Plaintiff to produce sufficient evidence to withstand summary judgment on the ultimate issue of pretext.  *See McDonnell Douglas,* 411 U.S. at 802.  Plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve Defendants' articulated legitimate reason or (2) believe than an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of Plaintiff's termination.  In other words, Plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contractions" in Defendants' proffered legitimate reasons that a "reasonable fact finder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate" the action taken by Defendants.  *Fuentes,* 32 F.3d at 764-65 (*quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

In response, Plaintiff argues that "other male employees of Fox Chapel Foods were not terminated despite engaging in conduct that a reasonable factfinder could find to be more worthy of termination."  Pl's Br. at 10.  In support of her contention, Plaintiff directs the Court to incidents involving Charles Wilson, Benny Miller, and Ryan Newfield, three (3) male employees whom Plaintiff contends were similarly situated to her, yet disciplined more leniently than her.

12

The first comparator identified by Plaintiff is Charles Wilson ("Wilson").  Wilson was given a one-day suspension after he engaged in an "argument" with Harry Clark, a store manager, in the back room of the store.  However, unlike Mr. Wilson, Plaintiff was not disciplined after her confrontation in the back room with Renee Sanger and Nau, nor was she disciplined after her first confrontation with Paul Rosenberg on the sales floor.  Rather, Plaintiff was initially disciplined after her re-entry into the store and she again confronted Paul Rosenberg, the store owner, on the sales floor.  Plaintiff's employment was not terminated until October 2, 2003, when she again verbally attacked Paul Rosenberg during the grievance session.

In a separate and unrelated incident, Wilson was caught stealing cigarettes from the store and "he was allowed to voluntarily resign rather than to be terminated for employee theft."  Pl's Br. at 11.  Plaintiff contends that she "was never afforded any such opportunity." *Id.*  However, during her deposition, Plaintiff admitted that she too was actually offered the opportunity to resign, but she elected not to and proceeded forward with the grievance session.[7]

Next, Plaintiff points to an incident which allegedly involved Benny Miller ("Miller"), who according to Plaintiff was not terminated despite being caught smoking marijuana on the store's premises.  The summary judgment record demonstrates, however, that Miller was never caught smoking marijuana on the store's premises and the only incident

---

[7]     Plaintiff testified during her deposition as follows:

"[B]efore this meeting I was under recommendation from Sue Riley that why don't I take their - - they proposed that I quit and they told me - - they told Sue that they would not contest my unemployment if I would just quit and they would put down lack of work for me as my reason so I could collect my unemployment; and I would not quit. . . ."  Pl's Depo. at 52.

13

involving Benny Miller occurred in November 2003; one month after Plaintiff's discharge on October 2, 2003.  *See* Nau Depo. at 88-90; and Affidavits from Benny Miller and Harry Clark.

Lastly, Plaintiff points to an incident which involved Ryan Newfield ("Newfield"), which resulted in Newfield being afforded a "last chance agreement" rather than termination. The summary judgment record reflects that Newfield was disciplined because he had been on his personal cell phone in the store for an extended amount of time, and employees are not supposed to get telephone calls while in the store.  Nau Depo. at 81.

Upon review of the summary judgment record, the Court finds that the record reflects that  incidents involving the "male employees" in no way involve the same or similar conduct as that exhibited by Plaintiff.   As the Court discussed in the context of the *prima facie* case, Plaintiff's evidence of discrimination is insufficient as a matter of law.   Plaintiff has not demonstrated that similarly situated individuals were treated differently than her with regard to similar conduct.  The record is devoid of any evidence from which a reasonable fact-finder could find that Defendants' reason for Plaintiff's termination was her gender and not her misconduct.

2.     *Claims of Hostile Environment*

In order to prevail on her claims of hostile work environment, Plaintiff must prove that (1) she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive;[8] (3) the discrimination detrimentally affected her; (4) it would have

---

[8]      Historically, cases from the Third Circuit  have often phrased this element as requiring "pervasive and regular" harassment.   However, our appellate court

(continued...)

detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.  *Jenson v. Potter*,  435 F.3d 444, 449 (3d Cir. 2006).

In determining whether an environment is sufficiently hostile or abusive, courts must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).  The conduct "must be extreme to amount to a change in the terms and conditions of employment."  *Id*.

As the United States Supreme Court has emphasized, Title VII is not a " 'general civility code" ' and thus, "does not provide a cause of action for 'ordinary tribulations of the workplace." ' *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations omitted).

Plaintiff alleges that Paul Rosenberg and Howard Rosenberg created a hostile work environment towards her because of her "status of a female."  Speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts.

Plaintiff contends that the conduct of Paul Rosenberg and Howard Rosenberg created a hostile work environment.  For example, she alleges that the following comments were harassing and disparaging:

---

[8](...continued)
recently acknowledged that the difference between its own formulation of this element and that of the United States Supreme Court, which requires "severe or pervasive" harassment, is significant, and that the latter must control.  *See Jensen v. Potter*, 435 F.3d 444, 449 n. 3 (3d Cir. 2006) (internal citations omitted).

"a.    Paul Rosenberg told her that Joe Pogel, Store Union Steward, should be the one involved in union problems and not her.

b.    Paul Rosenberg told her he wishes his stores were not unionized.

c.    Paul Rosenberg told her that if she could not handle certain produce department duties, he would get Mike Busick, Company Produce Supervisor, to come and help her.

d.    She heard Paul Rosenberg make an indirect comment about her, as she was some distance behind him and he was speaking to his brother stating 'what the f#@* does she want, her cake and eat it too.'

e.    Howard Rosenberg told her not to get involved in the union matter."

(Stmt of Undisputed Mat. Facts, at ¶ 57).

Further, Plaintiff alleges that Paul Rosenberg would continuously watch over and scrutinize her work, and, "at times when Plaintiff's presence was fully known to him, where (sic) Paul Rosenberg would make comments and/or have discussions with other employees regarding the Plaintiff as though she was not even there."  Pl's Br. at 13.

The Court finds and rules that the conduct Plaintiff alleges simply does not reflect the extreme conduct necessary to transform "the ordinary tribulations of the workplace" into a legally cognizable hostile work environment claim.  Both the Supreme Court and our appellate court have held that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not actionable under Title VII.  Instead, the harassing behavior must be 'sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment'." *Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 280 (3d Cir. 2001) *(quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788); *Pennsylvania State Police v. Suders,* 542 U.S. 129 (2004).

16

Plaintiff also contends that "her investigation" revealed that male employees were being paid more than female employees.  However, the summary judgment record clearly demonstrates that this was not the case.  For example, Plaintiff testified in her deposition that a male employee (Charles Wilson) "bragged" that he had been hired at $6.50.  While the male employee may have made such a statement, the record evidence reflects that Mr. Wilson was hired by Defendants on October 21, 2000 at $5.35 an hour.  Additionally, the record reflects that a female employee, Ellen Liberatore, was hired by Defendants on August 20, 2000, at $6.50 an hour and Carol Francis was hired by Defendants on February 23, 2001 at $5.35 an hour.

Moreover, James Slivosky, current Area Director for UFCW, Local 23, submitted an Affidavit in which he states that "no employee of Fox Chapel Community Market made any claim to me that male employees were being hired in at wages higher than female employees." Def's Ex. G.

The Court finds and rules,  after considering the evidence in its totality, that the summary judgment record is utterly devoid of any evidence which demonstrates that Defendants' conduct created a hostile work environment; rather Plaintiff relies upon her own "unsupported assertions, conclusory allegations, or mere suspicions."  Such unsubstantiated speculation is not sufficient to withstand summary judgment. *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2004).

Overall, aside from her mere speculation and conclusory allegations, Plaintiff has not provided any competent evidence that could lead a reasonable fact finder to believe that gender

17

was a factor in the treatment she received from Defendants.  Because Plaintiff's opposition filing does little more than re-allege the factually unsupported allegations contained in her pleadings, Plaintiff has not established the existence of a genuine issue of material fact that would defeat Defendants' motion for summary judgment on her claims of unlawful termination and hostile work environment brought under Title VII.

B.      Prima Facie Case Under FMLA

The FMLA  provides up to twelve workweeks of unpaid leave during a twelve-month period for certain family reasons and any serious health condition that makes the employee unable to perform the functions of his or her position.  29 U.S.C. § 2612(a)(1).  The statute expressly prohibits an employer from retaliating against an employee for exercising his or her FMLA rights.  29 U.S.C. § 2615(a)(2).

To establish a *prima  facie* case of retaliation under the FMLA, Plaintiff must establish that (1) she took an FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004).  Once a plaintiff makes out a *prima facie* case, the usual *McDonnell Douglas* burden shifting framework is implicated.  *See Weston v. Pennsylvania*, 251 F.3d 420, 432 (3d Cir. 2001).  Accordingly, the plaintiff bears the initial burden of presenting a *prima facie* case.

Similar to her Title VII claims, the Court finds that Plaintiff has simply failed to present any evidence to show that Defendants engaged in any retaliatory conduct toward Plaintiff as a result of the exercise of her FMLA rights.

As stated *supra*, the Court finds and rules that Plaintiff's conduct on September 4, 2003, and October 2, 2003, provides a sufficient basis for her termination.   "The FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA  claim." *Cohen v. Pitcairn Trust Co.*, 2001 U.S. Dist. LEXIS 10876, at *9 (E.D. Pa. 2001).

Plaintiff also contends that upon her return from FMLA leave, her wage and benefits were adversely affected.  However, the summary judgment record does not support this contention.  As a result of Plaintiff being awarded the full-time position upon her return from leave, she received the following wage and benefit increases under the CBA:

a) a wage increase from $8.30 to $8.90 per hour;

b) Dependent Health Care coverage;

c) a guarantee of 40 hours scheduled Monday through Saturday;

d) increased pension contributions;

e) placement on a full-time seniority list ahead of all part-time employees.

(Stmt of Undisputed Mat. Facts, at ¶ 43.)

In response, Plaintiff alleges that upon her return from leave she "lost her assistant manager" position to Michael Sullivan.  Interestingly, the position of assistant manager is a non-bargaining unit position by the terms of the CBA; yet, during all times of her employment, Plaintiff was a member of the bargaining unit represented by UFCW, Local 23.(*Id.* at ¶ 48). Plaintiff testified in her deposition that she "was management outside of the agreement."  (Pl Depo. at 114.)

19

The record evidence demonstrates, however, that at all times relevant to this litigation, the sole representatives of UFCW Local 23 were Sue Riley, Business Representative of Local 23 and/or Joe Pogel, Store Union Steward.  Further, Plaintiff never filed any grievance on behalf of any employee at the store and she did not attend any grievance meetings.  *(See* Affidavit of Scott Moberg.)

Plaintiff also contends that upon her return from FMLA leave, Paul Rosenberg told managers that she was not allowed to work overtime.  However, Plaintiff testified during her deposition that she was denied overtime "at all times.  I mean, both times.  It was before and it was after" she gave birth.  (*See* Pl's Depo. at 147-48.) Although Plaintiff never filed a grievance on this issue, she testified that she "made it known."  (*Id.* at 148.)  The Court finds that there is no evidence which demonstrates that Plaintiff was denied overtime in retaliation for her exercise of rights under the FMLA.

Lastly, Plaintiff complains that "upon her return from FMLA leave [] her schedule was changed without her knowledge and that she was no longer permitted to work on scheduled days off, which also adversely affected her income."  Pl's Br. at 18.  Again, however, the record evidence belies Plaintiff's complaints.  For example, Plaintiff acknowledged in her deposition that Defendants accommodated her schedule because of child care arrangements, *to wit*:

> They worked with me on that schedule because of my baby-sitter, which I
> thought was great.  I mean, before this, before my son was born, I was 6 to
> 2, as I stated, and then one day a week was 6 to 12 or 6 to 1; and on
> Sundays, depending on how long Dan needed me, I would work 6 to 12,
> sometimes 6 to 2, 6 to 11, something like that. . . .
> The company worked with me on my child care availability.

(Pl's Depo. at 78.)

When Plaintiff returned from FMLA leave, her full-time schedule required her to work Monday nights, although before her leave she did not work any evenings.  During her deposition, Plaintiff acknowledged that Section 9.7 of the CBA specifies that full-time employees shall not be required to work more than three (3) nights in any one week and that night work shall be rotated among full-time employees.[9]  Plaintiff also confirmed that, although she was not happy about working nights, when she was made aware of Section 9.7 of the CBA, "it was agreed that [she] would work that one night a week."

Overall, aside from her mere speculation and conclusory allegations, Plaintiff has not provided any competent evidence that could lead a reasonable fact finder to believe that Defendants' took any retaliatory action against Plaintiff as a result of her FMLA leave.  Accordingly, summary judgment will be granted to Defendants' on Plaintiff's retaliatory claims under the FMLA.

C.      **State Law Pendent Claims For Negligent Supervision and Intentional Infliction of Emotional Distress**

Plaintiff  also alleges violations under Pennsylvania state law for negligent supervision and intentional infliction of emotional distress.  The Court of Appeals for the Third

_____

[9]      Section 9.7 of the CBA provides as follows:

> 9.7  <u>Night Work</u>
> Where the Employer designates a shift for full-time employees providing for night work, full-time employees shall not be required to work more than three (3) nights in any one week.  Night work shall be rotated among full-time employees.  All hours of work scheduled after 6:00 p.m., shall be considered night work.  This does not apply to regularly scheduled night crew.

> Exh. C., CBA, Section 9.7.

Circuit has held that if the federal counts of a complaint are dismissed then the district court should "ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195-96 (3d Cir. 1976). *See also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("Under Gibbs jurisprudence, where the claims over which the district court has original jurisdiction are dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") Given that Defendants' motion will be granted on the federal claims in this case, and given that there are no extraordinary circumstances which would warrant the exercise of jurisdiction over the pendent state law claims, the Court will decline to exercise supplemental jurisdiction.  Accordingly, Plaintiff's claims for negligent supervision and intentional infliction of emotional distress under Pennsylvania state law will be dismissed without prejudice.  *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

### CONCLUSION

Viewing the facts in the light most favorable to Plaintiff, the Court finds that she has failed (i) to establish a *prima facie* case of gender discrimination and (ii) to establish sufficient evidence from which a reasonable fact finder could rationally find that Defendants' articulated reasons for its employment actions were unworthy of credence, or that the decision to terminate Plaintiff was motivated by a discriminatory reason.  Where a plaintiff cannot show such

22

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in defendant's reasons for its action, summary judgment is required. *See Fuentes,* 32 F.3d at 756. Accordingly, summary judgment will be granted as to Plaintiff's claims of gender discrimination.

Likewise, Plaintiff has failed to establish a prima facie case of violations of the FMLA. Accordingly, summary judgment will be granted as Plaintiff's claims that Defendants retaliated against her in violation of the FMLA.

Plaintiff's claims for negligent supervision and intentional infliction of emotional distress will be dismissed without prejudice. An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY GRACE MAURIZIO,   )
            )
     Plaintiff,   )
            )
    v.       )   02: 04cv1168
            )
FOX CHAPEL FOODS, INC.; t/d/b/a FOX )
CHAPEL COMMUNITY SUPERMARKET, )
PAUL ROSENBERG AND HOWARD  )
ROSENBERG,      )
            )
     Defendants.  )

## ORDER OF COURT

   AND NOW, this 5th day of September, 2006, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

   1.  The Motion for Summary Judgment filed by Defendants is **GRANTED** as to

all claims of alleged unlawful termination and discrimination in violation of Title VII of the

Civil Rights Act of 1964 and the Pennsylvania Human Relations Act;

   2.  The Motion for Summary Judgment filed by Defendants is **GRANTED** as to

all claims of alleged retaliation in violation of the Family Medical Leave Act;

   3.  The Pennsylvania state law claims for negligent supervision and intentional

infliction of emotional distress are dismissed without prejudice forthwith; and

   4.  The Clerk shall docket this case closed.


         BY THE COURT:


         <u>s/Terrence F. McVerry</u>
         United States District Court Judge

cc:       Douglas C. Hart, Esquire
            Email: dhart@leechtishman.com

            Manning J. O'Connor, II, Esquire
            Email: moconnor@leechtishman.com

            Daniel W. Cooper, Esquire
            Email: COOPERANDLEPORE@HOTMAIL.COM